United States District Court
Southern District of Texas
**ENTERED**
December 12, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STAN JENNINGS | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00243 |
| | § | |
| BRAZORIA COUNTY and | § | |
| MAINTENANCE SUPERVISOR JONES | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment ("Brazoria County's Motion for Summary Judgment") (Dkt. 39); Defendant Jones's Motion for Summary Judgment Qualified Immunity ("Jones's Motion for Summary Judgment") (Dkt. 40); and Defendant Jones's Amended Opposed Motion to Stay ("Jones's Motion to Stay") (Dkt. 44). These motions were referred to this Court by United States District Court Judge George C. Hanks, Jr. *See* Dkt. 45. Having considered the briefing, applicable law, and oral argument, the Court **RECOMMENDS** that Brazoria County's Motion for Summary Judgment be **GRANTED**; Jones's Motion for Summary Judgment be **DENIED**; and Jones's Motion to Stay be **DENIED AS MOOT**.

## FACTUAL BACKGROUND

Plaintiff Stan Jennings ("Jennings") was arrested on June 1, 2015, for driving under the influence in Brazoria County. After pleading guilty, Jennings was sentenced to

serve prison time.   While awaiting transfer to prison, Jennings stayed at the Brazoria County Detention Center (the "Jail").

According to the Original Complaint, Brazoria County often uses Jail inmates to perform various maintenance-related tasks.   At the Jail, Jennings began working under the direction of Chad Jones ("Jones"), a supervisor in charge of the Jail's maintenance. Jennings is a welder by trade, and he performed many welding tasks at the Jail.   On August 7, 2015, Jennings claims that Jones directed him to cut the tops off of barrels "some emblazoned with warnings that they contained flammable, combustible[,] and hazardous materials and others without warnings." Dkt. 48-1 at 2.   Jones allegedly knew that Jennings was using a torch tool to remove the tops of the barrels, but failed to warn him or give him any safety directions or equipment.   Jennings cut the tops off six barrels without incident.   When Jennings started to cut the top off a seventh barrel, it exploded, resulting in severe injuries.   A helicopter life-flighted Jennings to a Houston hospital for treatment and he remained in the hospital for nineteen days before returning to the Jail.

Following his return to the Jail, Jennings claims that he submitted numerous medical treatment requests for the pain he was experiencing as a result of the accident. He alleges that his pleas for assistance were repeatedly ignored and that he received inadequate medical treatment.

Jennings filed this lawsuit against Brazoria County and Jones, individually, alleging claims under 42 U.S.C. § 1983 for violations of his constitutional rights. Specifically, Jennings asserts that "Defendants' actions and inactions violated plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments." Dkt. 1 at 4.

Jennings further claims Brazoria County is liable for damages under the Texas Tort Claims Act ("TTCA").

Brazoria County and Jones seek summary judgment on all claims advanced by Jennings.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Typically, on a summary judgment motion, the moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In civil rights actions such as this one, however, a government official's good faith assertion of a qualified immunity defense alters the usual summary judgment burden of proof. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Once the government official asserts qualified immunity, the plaintiff has the burden to show there is "a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly

3

established law." *Id.* (internal quotation marks and citation omitted). *See also Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.") (internal quotation marks and citations omitted); *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir. 1987) ("Once the defendant asserts [qualified immunity], the burden shifts to the plaintiff to rebut it.").

When evaluating whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (collecting cases). In so doing, the court must draw all reasonable inferences in favor of the nonmoving party, even on a summary judgment motion based on qualified immunity. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.") (citation omitted).

## ANALYSIS

As an initial matter, Jennings contends that the failure by Brazoria County and Jones to file an answer in this case means that they have admitted all allegations made in the Complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). According to Jennings, it is inappropriate to enter summary judgment against him since the Original Complaint's substantive allegations have been admitted. Jennings's argument is unpersuasive since "it is widely accepted among courts

4

and commentators that the filing of a motion for summary judgment prior to the filing of an answer tolls the [deadline] for the filing of such answer during the pendency of the motion under Fed. R. Civ. P. 12." *Schreane v. Keffer*, No. 09-1252, 2011 WL 673883, at *1 (W.D. La. Feb. 16, 2011) (collecting authorities).

With that preliminary issue out of the way, the Court will turn to addressing Brazoria County's Motion for Summary Judgment and Jones's Motion for Summary Judgment.

## A.   BRAZORIA COUNTY'S MOTION FOR SUMMARY JUDGMENT[2]

### 1.   Section 1983 Liability

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Section 1983 specifically provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

42 U.S.C. § 1983. "The Supreme Court [has] held that municipalities are 'persons' subject to suit under Section 1983, but that municipalities cannot [b]e held liable on a

---

[2] This motion is actually brought by both Brazoria County and Jones. Because the motion focuses on the issues of municipal liability applicable only to Brazoria County, the Court refers to this motion as Brazoria County's Motion for Summary Judgment.

*respondeat superior* [or vicarious liability] basis, i.e., a municipality cannot be held liable simply because one of its employees violated a person's federal rights." *Vanskiver v. City of Seabrook*, No. H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (citation omitted). *See also Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents.").

The elements of municipal liability under Section 1983 are: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose moving force is the policy or custom.[3] *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The crux of Brazoria County's Motion for Summary Judgment focuses on the second prong: is there an official policy or custom? The term "policy or custom" includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). Proof of a policy

---

[3] Brazoria County and Jones maintain that Jennings's claims under the Fourth, Fifth, and Fourteenth Amendments have no legal basis and cannot survive as a matter of law. In a nutshell, the argument is that Jennings's claims arise from an incident that took place after he was convicted and the Eighth Amendment serves as the primary source of substantive protection after conviction. Jennings fails to respond to this contention in his summary judgment response. At oral argument, Jennings's counsel effectively abandoned the constitutional claims under the Fourth, Fifth, and Fourteenth Amendments, freely conceding that the only alleged constitutional violation his client is actively pursuing in this case is an Eighth Amendment claim for cruel and unusual punishment. Accordingly, the Court recommends summary judgment be granted in favor of Brazoria County and Jones and against Jennings for alleged violations of the Fourth, Fifth, and Fourteenth Amendments. That leaves the Eighth Amendment claim for the Court to address.

or custom normally requires more than a showing of isolated acts. *See Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

Although Jennings blithely asserts in the Complaint that he "had his rights violated and was injured due to the policies, practices, customs and procedures of Brazoria County," he does not mention or cite any formal policy or governmental custom in his opposition to Brazoria County's Motion for Summary Judgment. Dkt. 1 at 4. Instead, Jennings claims that the County is liable under Section 1983 because it ratified Jones's conduct after the fact. In invoking the oft-cited, but seldom successful, ratification theory of municipal liability, Jennings argues that the County knew of "the outrageous behavior of Brazoria County employees including Chad Jones[, however] Brazoria County did not discipline anyone involved thereby constituting ratification of the actions of cutting off the tops of hazardous, flammable liquids and fumes, handling of the hazardous waste by untrained jail trustees and illegally dumping hazardous wastes." Dkt. 48 at 9.[4]

The ratification theory of municipal liability can be traced to the Supreme Court case *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). In *Praprotnik*, a plurality of the Supreme Court recognized "a scenario in which a municipality could be held liable

---

[4] In opposing summary judgment, Jennings cites numerous cases for the unremarkable proposition that the Eighth Amendment's prohibition against cruel and unusual punishment is violated when a governmental entity is deliberately indifferent to an inmate's medical needs. Any claim against Brazoria County in this case for withholding medical care fails as a matter of law because there is no evidence of a municipal custom or policy, just an allegation of isolated conduct by an unnamed county employee. *See Conner v. Travis Cty.*, 209 F.3d 794, 796 (5th Cir. 2000) ("Counties and supervisors are not liable for constitutional violations committed by county employees unless those violations result directly from a municipal custom or policy.") (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000)).

7

for a single episode of conduct initiated by a non-policymaker employee." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004). The Supreme Court explained:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik,* 485 U.S. at 127. The Fifth Circuit has held that the ratification theory is an appropriate basis for imposing municipal liability only in "extreme factual situations." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (internal quotation marks and citations omitted).

Although the scope of the ratification theory is not always clearly defined, there is no question that "policymakers who '[s]imply go[] along with' a subordinate's decision do not thereby vest final policymaking authority in the subordinate, nor does a 'mere failure to investigate the basis of a subordinate's discretionary decisions' amount to such a delegation." *Milam*, 113 F. App'x at 627 (quoting *Praprotnik*, 485 U.S. at 130). Similarly, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986)). These limitations on municipal liability are vital to prevent the ratification theory from becoming a theory of *respondeat superior*, a concept the Supreme Court has expressly rejected. *See Board of Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 403 (1997) (a local governmental entity is not vicariously liable under

8

Section 1983 for its employees' conduct); *Praprotnik*, 485 U.S. at 126 ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.").

*Praprotnik* tells us that ratification liability requires that the authorized policymakers approve not only the subordinate's act, but also the basis for it. *See Praprotnik,* 485 U.S. at 127. "This means that the policymaker must have actual knowledge of the improper basis for the subordinate's action and yet approve the action anyway." *Camacho v. City of El Paso*, No. EP-15-CV-00318-PRM-RFC; 2016 WL 3519662, at *12 (W.D. Tex. June 22, 2016) (citation omitted). *See also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) (refusing to impose liability based on policymaker's approval of a subordinate's decision without a showing that the policymaker had actual knowledge of the improper basis of the subordinate's decision); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (holding that an unconstitutional custom or policy "cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality") (internal quotation marks and citations omitted).

The Fifth Circuit's *Coon* case is instructive. In that case, the Fifth Circuit found that a sheriff's defense of his deputies, based upon their version of a contested incident, did not constitute a municipal policy because the deputies' "version did not show that the deputies' actions were manifestly indefensible." 780 F.2d at 1162. *See also Allen v. City of Galveston*, No. G-06-467, 2008 WL 905905, at *8 (S.D. Tex. Mar. 31, 2008) ("[A] municipality is not liable under the ratification theory where a Police Chief accepts his

9

officers' version of events, so long as 'that version did not show that the deputies' actions were manifestly indefensible.'") (quoting *Coon*, 780 F.2d at 1162).

In the case at bar, Jones maintains that he did not, nor did anyone acting on his behalf, direct Jennings to cut the barrels. Jones further claims that he did not know that the drums contained any flammable or combustible substance, nor was he aware that the drums were labelled as containing flammable or combustible substances. As in *Coon*, there is nothing improper or unseemly in Brazoria County accepting its employee's version of the events surrounding the accident. Based on Jones's account of what happened, a factfinder could not conclude that Jones's actions were manifestly indefensible. Indeed, if a factfinder believes Jones, it is hard to argue with a straight face that he did anything remotely troubling. In Jennings's view, Brazoria County should face liability in this case because it accepted Jones's version of events and refused to discipline him for something he claimed he did not do. Jennings's theory of liability in this case attempts to turn Section 1983 liability on its head by imposing liability on a governmental entity anytime it accepts is employee's account of an incident. That is not, and has never been, the law. Brazoria County is entitled to believe Jones's version of events without automatically subjecting itself to liability if he is incorrect. *See Diamond-Brooks v. City of Webster*, No. 12-CV-3482, 2014 WL 527910, at *8 (S.D. Tex. Feb. 6, 2014) ("the policymaker does not ratify unconstitutional behavior simply because he believes the officer's version of events . . . even if that version is subsequently proven to be wrong.") (internal quotation marks and citations omitted).

Because the ratification theory of liability is not viable in this case, the Court finds that summary judgment is appropriate against Jennings on his Section 1983 claim.

## 2.     Texas Tort Claims Act

In Texas, the doctrine of sovereign immunity insulates a county from a plaintiff's state-law claims against it. *See Holland v. City of Houston*, 41 F. Supp. 2d 678, 710 (S.D. Tex. 1999). Under sovereign immunity principles, a county cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). The TTCA provides a limited waiver of sovereign immunity for personal injury or death caused by the use of tangible personal property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). However, the TTCA expressly exempts from such waiver any claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . ." *Id.* at § 101.057(2). Stated succinctly, to sue a governmental unit under the TTCA's limited sovereign immunity waiver, a plaintiff must allege an injury caused by the negligent use of tangible personal property.

Brazoria County argues that the TTCA does not provide a waiver of sovereign immunity in this case because the conduct about which Jennings complains constitutes an intentional tort, placing it squarely within the intentional tort exception to the TTCA's waiver of immunity. Brazoria County directs the Court to the plain and unambiguous language of the Original Complaint, which states: "All individuals sued are liable for punitive damages as they were deliberately indifferent to the plaintiff's constitutional

11

rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious." Dkt. 1 at 5. It is also worth pointing out that the underlying claims in this case arise from intentional conduct: Jennings claims that Jones told him to cut the tops of the drums even though "[t]he drums were plainly visible to County Supervisor Jones and he knew that the drums were once full of flammable and combustible substances used by Brazoria County." Dkt 1 at 2.

Jennings does not directly address this argument in his response to the summary judgment motions. Instead, Jennings argues that immunity is waived because Brazoria County "furnish[ed] personal tangible property that is inadequate, inappropriate, defective, or lacks an integral safety component." Dkt. 48 at 17. This argument misses the mark completely. Even if, as Jennings alleges, Brazoria County furnished the tangible property that resulted in serious injuries, the fact remains that the underlying conduct at issue is intentional in nature. "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Harris Cty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (collecting cases). The facts on which Jennings bases any negligence claim are the same facts underlying his intentional tort claim. He cannot "circumvent the intentional tort exception by couching his claims in terms of negligence." *Swiat v. City of Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011) (citation omitted). *See also McIntosh v. Smith*, 690 F. Supp. 2d 515, 537 (S.D. Tex. 2010) ("Texas law does not allow a plaintiff to avoid the bar of governmental immunity by describing essentially intentional conduct as

12

negligence.") (citations omitted).   Accordingly, Brazoria County is entitled to sovereign immunity under the TTCA.

## B.   JONES'S MOTION FOR SUMMARY JUDGMENT

In his Motion for Summary Judgment, Jones claims that the qualified immunity doctrine bars Jennings from pursuing Section 1983 claims against him in his individual capacity.   Qualified immunity provides that "'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   The qualified immunity doctrine reconciles two competing interests:

> One interest is the compensation of persons whose federally protected rights have been violated.   Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties.   Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."

*Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).   "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

The Supreme Court has recognized a two-pronged approach for resolving government officials' qualified immunity claims:   a government official is entitled to qualified immunity if either (1) the plaintiff failed to state a constitutional claim; or (2) the defendant's conduct was objectively reasonable in light of the clearly established law.

*See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney*, 367 F.3d at 349–50 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to a substantial risk of serious harm faced by prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official can be found liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Eighth Amendment liability thus requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In seeking summary judgment, Jones attached a declaration to his motion stating that he was not present when the drums were cut, he did not direct Jennings to cut the drums and was completely unaware that Jennings was planning to cut the drums. In Jones's view, this summary judgment evidence clearly establishes that he was not personally involved in the accident giving rise to this lawsuit and the case against him should, therefore, be thrown out. In response, Jennings attached a declaration (the "2018 Declaration") to his papers opposing summary judgment stating that Jones had been present when the drums were cut and, more importantly, Jones had specifically directed him to cut the top of the drums. *See* Dkt. 48-1. On its face, the 2018 Declaration

14

undoubtedly creates a genuine issue of fact for which summary judgment is inappropriate: Did Jones act with deliberate indifference to Jennings's health or safety?

Jones strongly objects to various statements in Jennings's 2018 Declaration, arguing that such statements should be disregarded under the "sham affidavit" doctrine. That rule provides that "[a]lthough the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) (citations omitted). *See also Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (if a party who "has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (citation omitted).

Jones argues that while the 2018 Declaration claims that Jones directed Jennings to cut the tops off the drums, a handwritten statement executed by Jennings in 2015 (the "2015 Statement") "indicates he was alone, Chad Jones was not present to direct his activities and Jennings acted on his own in deciding to cut the drums." Dkt. 49 at 7. There is, according to Jones, a blatant contradiction between the 2018 Declaration and the 2015 Statement that cannot be reconciled. As such, Jones maintains this Court should not consider the 2018 Declaration at all.

Before diving headfirst into a meaningful analysis of the 2015 Statement and 2018

Declaration, it is worth noting that the 2015 Statement is unsworn. The 2015 Statement is simply a one-page handwritten document signed by Jennings. *See* Dkt. 40-1. It does not contain any language stating that it is signed under penalty of perjury and it is not attested to by a notary public. The fact that the document is unsworn is important because courts in the Fifth Circuit appear to apply the sham affidavit doctrine only when a declaration contradicts sworn testimony or statements. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.") (citation omitted). *See also Dallas Indep. Sch. Dist.*, 220 F.3d at 386 ("[A] plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior [deposition] testimony without explanation."); *Deutsche Bank Nat'l Tr. Co. for Argent Sec. Inc. Asset-Backed Pass-Through Certificates, Series 2006-W5 v. McGowen*, No. A-16-CV-273-DAE-ML, 2017 WL 8809687, at *6 (W.D. Tex. Dec. 19, 2017) (applying the sham-affidavit rule when the previous statements were "not made in a deposition" but the witness "[swore] under oath").

Similarly, courts across the country have expressly held that the sham affidavit rule only applies to alleged contradictions to previous sworn testimony. *See, e.g., Kilgore v. Trussville Dev., LLC*, 646 F. App'x 765, 771 (11th Cir. 2016) ("[O]ur Court appears to have discussed application of the doctrine only when an affidavit or declaration allegedly contradicted sworn deposition testimony.") (collecting cases); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (denying application of sham affidavit rule based on an

16

affidavit contradicted by unsworn letters); *Shockley v. City of Newport News*, 997 F.2d 18, 23 (4th Cir. 1993) (stating that sham affidavit doctrine does not apply to an affidavit that contradicts an unsworn letter); *Gallmore v. York*, No. 15-13283; 2018 WL 3245209, at *6 (E.D. Mich. Feb. 14, 2018) ("the sham affidavit doctrine cannot properly be applied to discredit prior *unsworn* statements or documents"). This Court sees no reason to take a different path. Accordingly, the Court holds that the sham affidavit doctrine does not apply to discredit prior unsworn statements. Because the 2015 Statement is unsworn, the sham affidavit rule has no application to the present case.

Even if the Court were to assume that the 2015 Statement was a sworn statement, the sham affidavit doctrine would still not help Jones in this particular case. To trigger the sham affidavit rule, the Court must find that the inconsistency between Jennings's 2015 Statement and 2018 Declaration is clear and unambiguous enough to justify striking the subsequent declaration. To make such a determination, the Court must obviously first look at the specific language contained in the 2015 Statement:

9-2-2015

1508-0143

I was told to help mr Hall go and dump
what was in the 55 gallon Bucralls at the
back pond we went to dump and did not bring
any tools, so hall pushed one 55 gallon drumb
off trailer and the Lid broke open and deained out
so we went back to shop and get some tools and
unload the one's that were empty and went to get tools
and Hall had Left so did not have anything to do so
I started cutting lids off and dropping lids in the
bottom  cutting with plazzrk, I had been Knocking a
hole in the top of the took 55 gallon drumbs to
releaze prezzure from drumb use buff wheel for cleaning
rust off drumbs for better ground for cutting, did seven
barrels then went to Lunch after Lunch was over
went back to shop was going to smoke a cigg and only
had 2 55 gallon drumbs Left so figured I would
cut Last Two barralls and then smoke a cigg + wait for
hall but the 8th barrel blew up on me I was out
for the count, I come to Mr Martinez had me proped
up and was helping me and searcy + cantu was
helping also they got me up and I walk to gearney and
was on my way to Life Flight  to bastefuny abelnly

Stanled Jennings
SO# 53733

PauW. S. Rose
9-2-2015

Dkt. 40-1. This language does not conclusively state that Jones was absent on the day of

the accident. It also does not explicitly state that Jones never issued an order directing

Jennings to cut the tops of the drums. Faced with the lack of a clear or definite statement

on these central issues, Jones argues that the language contained in the 2015 Statement

can be read to suggest that Jennings made the decision, by himself, to cut the top of the

drums, without input from Jones or anyone else. That is, without question, a possible

18

reading of the document.   Another possible interpretation is that 2015 Statement is completely silent on the issue.

"When an affidavit merely supplements rather than contradicts prior [] testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc.*, 72 F.3d at 496 (citation omitted).   A declaration permissibly supplements an earlier statement if it merely "clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition." *Id.*   The sham-affidavit rule does not preclude testimony by declaration where the witness "'had no occasion' to reveal the details contained in the [declaration] during his earlier [statement]," and "a party may supplement his [previous statement] with additional, consistent facts and details via [declaration]." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 335 (5th Cir. 2008) (quoting *Clark v. Resistoflex, Inc.*, 854 F.2d 762, 766–67 (5th Cir. 1988)).

Having carefully considered the statements made in the 2018 Declaration, the Court is of the opinion that none of the statements provide a clear and unequivocal contradiction of the testimony contained in Jennings's previous written statement. Therefore, the Court is of the opinion that even if the 2015 Statement was sworn, Jennings's 2018 Declaration is not a sham and should be considered for purposes of ruling on Jones's Motion for Summary Judgment.   Once the Court takes into account the 2018 Declaration, it is clear that there is a genuine issue of material fact with respect to whether the defense of qualified immunity applies.   Jones claims he did not direct

Jennings to cut the tops of the barrels; Jennings states the exact opposite.  Jones's Motion for Summary Judgment should, therefore, be denied.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Brazoria County's Motion for Summary Judgment be **GRANTED**; Jones's Motion for Summary Judgment be **DENIED**; and Jones's Motion to Stay be **DENIED AS MOOT**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 12th day of December, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE